UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEONTE LATHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-02391-GCS |
| | ) |
| KEVIN REICHERT | ) |
| and | ) |
| ANTHONY WILLS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

Plaintiff Deontae Latham, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Latham alleges that his due process rights were violated during a disciplinary hearing, he experienced unconstitutional conditions of confinement, and he was subjected to excessive force. (Doc. 1).

On January 22, 2025, the Court conducted a review of the complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on an Eighth Amendment conditions of confinement claim against Anthony Wills and Kevin Reichert for failing to remedy the

conditions in segregation. (Doc. 14).[1] As to the remaining claim in this case, Plaintiff alleges that he lacked access to recreation, was limited to one phone call a month, and had limited showers. *Id.* at p. 22. He was also placed in the East Cellhouse which lacks adequate living conditions and is dangerous. *Id.* Latham has been housed in North 2 Segregation Unit since June 27, 2024. *Id.* at p. 25. Latham alleges that he has failed to receive the conditions and standards that IDOC's own administrative directives label mandatory for inmates in segregation. *Id.* at p. 26. Latham points to the Restrictive Housing Conditions of Confinement Standards which requires a bed for each inmate, clean bedding, running water and toilet, and adequate lighting. (Doc. 1-1, p. 37-38). The standards also require a shower no less than three times per week, state issued toiletries, a weekly exchange of clothes, medications, and ADA accommodations. *Id.* Latham filed grievances about his conditions, including his access to recreation, showers, lack of access to sanitation and cleaning supplies, and exposure to hazardous conditions. (Doc. 1, p. 27-28). The hazards he faced included feces, urine, waste, and food entering his cell. *Id.* at p. 28, 37. Mentally ill inmates threw urine on Latham, banged on the walls all night, screamed obscenities, and set fires in the unit. *Id.* at p. 28. Despite his grievances, the conditions did not improve. *Id.* at p. 27-29. Latham also failed to receive the required

---

[1] The Court dismissed without prejudice Plaintiff's Fourteenth Amendment due process claim for failure to state a claim and severed his Eighth Amendment excessive force claim against Collins and John Doe #'s 1-5 for their use of force against Latham in September 2023 into another case. (Doc. 14, p. 9-10).

mental health evaluations and treatment while in segregation. *Id.* at p. 34, 37. Latham alleges that Defendant Wills and Defendant Reichert responded to his grievances but were also aware of the conditions in segregation due to numerous complaints from inmates, as well as numerous lawsuits filed about the conditions in North 2.

Pending before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Reichert and Wills. (Doc. 26). Defendants argue that Plaintiff failed to exhaust his administrative remedies because he failed to pursue his allegations against them through the prison's grievance process prior to filing this lawsuit. Plaintiff filed an opposition to the motion. (Doc. 29).

On October 2, 2025, the Court held a hearing on the motion, heard testimony from Plaintiff, Jeffrey Olson, a Menard Counselor 2, and Margaret Madole from the Administrative Review Board ("ARB"). The Court took the matter under advisement. (Doc. 33). As the motion is ripe, the Court turns to address the merits of the motion.

## FACTS

The parties agree that two grievances are relevant to the claim in this case.

In grievance K4-0824-3604, Plaintiff references issues arising from his time in segregation which are like those alleged in his complaint, but he fails to discuss issues concerning his access to showers, recreation, and phone calls. Plaintiff does not name either Defendant in this grievance. The Chief Administrator ("CAO") denied the grievance on September 18, 2024. Plaintiff signed his intent to appeal the grievance to the

ARB on October 14, 2024. (Doc. 26-4, p. 18). The ARB received this appeal on October 21, 2024, and determined that no further redress was required as the appeal had been received thirty days past the date of the CAO decision. *Id*. at p. 17.

In grievance K4-0824-3670, Plaintiff references issues arising from his time in segregation which are also like those alleged in his complaint, but he fails to discuss access to showers and lack of mental health. Plaintiff does not name either Defendant in this grievance. The CAO denied the grievances on September 27, 2024. Plaintiff signed his intent to appeal to the ARB on November 6, 2024. (Doc. 26-4, p. 13). The ARB received this appeal on November 12, 2024, and it determined that no further redress was required as the appeal had been received thirty days past the date of the CAO's decision. *Id*. at p. 12.

Both grievance forms state: "[s]ummary of Grievance: (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved.)" (Doc. 26-4, p. 15, 19).

Other than these two grievances, the ARB did not receive any other grievances from Plaintiff regarding the conditions of confinement. Plaintiff filed suit on October 30, 2024. (Doc. 1).

## LEGAL STANDARDS

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Williams v. Rajoli,* 44 F.4th 1041, 1045 (7th Cir. 2022) (noting that "[w]e take a strict compliance approach to exhaustion[.]") (citations omitted). Exhaustion must occur before the suit is filed. *See Chambers v. Sood*, 956 F.3d 979, 981 (7th Cir. 2020); *Williams*, 44 F.4th at 1043. A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *Chambers,* 956 F.3d at 983; *Jackson v. Esser,* 105 F.4th 948, 956 (7th Cir. 2024). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Maddox v. Love,* 655 F.3d 709, 721 (7th Cir. 2011) (citations omitted). The purpose of

exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Hacker v. Dart*, 62 F.4th 1073, 1084 (7th Cir. 2023).

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008); *Jones v. Lamb*, 124 F.4th 463, 469 (7th Cir. 2024). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742 (7th Cir. 2008); *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015).

As an inmate confined within the IDOC, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance

procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint[,] or grievance has not been resolved to his or her satisfaction, he

or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the

standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

### DISCUSSION

During oral argument Defendants raised various issues as to why Plaintiff failed to exhaust his administrative remedies. However, the Court finds one argument is outcome determinative, *i.e.*, whether Plaintiff's grievances contained enough factual details regarding Defendants' conduct in this case.[2]

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials. Here, the undersigned finds that Defendants have met their burden, and Plaintiff did not exhaust his administrative remedies.

Defendant Reichart is the Acting Warden of Menard and Defendant Wills is the Head Warden of Menard. The names of these two Defendants, or a description of them or their actions/inactions, are totally absent from Plaintiff's relevant grievances. During

---

[2] For the purposes of this motion, the Court will assume *arguendo* that the two relevant grievances Plaintiff submitted to the ARB were timely pursuant to the "mailbox rule." *See, e.g.*, *Conley v. Anglin*, No. 11-3262, 513 Fed. Appx. 598, 601 (7th Cir. Mar. 25, 2013) (stating "[a]nd though the defendants would like us to presume that [Section] 504.850 and the ARB's own procedures do not recognize the 'mailbox rule,' they offered no support (and still don't) for the proposition."); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (holding prisoner had filed a timely appeal to the ARB by placing it in the prison mail system even though it was never received by the ARB).

the hearing, Plaintiff did not dispute that the grievances did not name or in any way identify Defendants. Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *See, e.g., Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "[w]e have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . [E]arly notice to those who might later be sued . . . has not been thought to be one of the leading purposes of the exhaustion requirement."); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (stating that "[t]he exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action.") (internal quotation marks and alterations omitted; citation omitted). *See also Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) (stating that "[w]e are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.").

As noted previously, the Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, 20 ILL. ADMIN. CODE § 504.810(c). The regulations instruct that grievances should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is

otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). Additionally, the Seventh Circuit indicates that an inmate should "articulat[e] what facts the prison could reasonably expect from a prisoner *in his position*." *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 2010 WL 2775864, at *3 (7th Cir. July 13, 2010).

Here, the grievances submitted by Plaintiff contained instructions in the summary of grievance portion to provide the name or identifying information of each person involved. Plaintiff has not described any of Defendants' actions and does not mention their names in *any* of the grievances currently before the Court. While Defendants may have responded to some of Plaintiff's grievances, responding alone is insufficient to put them on notice of a potential lawsuit, as they are required to respond to grievances as part of their jobs. Simply put, no grievances at issue refer to Defendants by name, title, or even description, nor does it describe any conduct attributable to them.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment on the issue of exhaustion (Doc. 26). The Court **DISMISSES** without prejudice Plaintiff' complaint for failure to exhaust administrative remedies. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and to close the case.

**IT IS SO ORDERED.**

**DATED: November 6, 2025.**

Digitally signed by Judge Sison
Date: 2025.11.06 12:44:30 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**